# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**CURTIS A. SMITH**
**YEOMAN SECOND CLASS (E-5), U.S. NAVY**

**NMCCA 201300223**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged**: 6 March 2013.
**Military Judge**: CDR John A. Maksym, JAGC, USN.
**Convening Authority**: Commanding Officer, USS MUSTIN (DDG 89).
**Staff Judge Advocate's Recommendation**: LT D.J. Hammond, JAGC, USN.
**For Appellant**: LCDR Shannon A. Llenza, JAGC, USN.
**For Appellee**: Maj Paul Ervasti, USMC; LT Lindsay P. Geiselman, JAGC, USN.

**27 March 2014**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of failure to obey a lawful general regulation, wrongful appropriation, making checks without sufficient funds, and dishonorable failure to pay a just debt, in violation of Articles 92, 121, 123a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 921, 923a, and 934. The military judge sentenced the appellant to confinement for eleven months and twenty-eight days, reduction to pay grade E-1, and a

bad-conduct discharge.  The convening authority (CA) approved the sentence as adjudged.  The pretrial agreement (PTA) had no effect on the adjudged sentence.

The appellant submitted an unsworn post-trial declaration (Post-Trial Declaration) in which he raises 33 assignments of error (AOEs).[1]  Appellate defense counsel framed the appellant's AOEs in summary fashion, based on the narrative portion of the appellant's extensive post-trial declaration.  These summary AOEs are contained in the appendix to this opinion.[2]

After considering the record of trial, the submissions of the parties, and the appellant's declaration, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Background

In March of 2011, the appellant signed a rental agreement through a leasing agency to live off-base in Yokosuka, Japan.  The Government paid the appellant a monthly overseas housing allowance (OHA) for a period of 13 months.  Despite promises to pay the rent, the appellant paid only $1,600.00 to the leasing agency, far short of the approximately $25,000.00 owed.[3]

In an effort to secure additional funds, in November and December of 2012, the appellant convinced teo shipmates to cash several of his personal checks when the appellant knew that he did not have sufficient funds in his account, thereby wrongfully appropriating $3,370.00 from one Sailor and $2,720.00 from the other.  Finally, the appellant wrote checks from his checking

---

[1] All AOEs are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).  We granted the appellant's motion to attach his post-trial declaration on 19 September 2013.

[2] The appellant's post-trial declaration contains 20 pages of introductory material, a 114-page complaint and inquiry section consisting of 31 separate paragraphs, and a 6-page reference section.  After a careful review, we generally agree with appellate defense counsel's framing of the various AOEs; however, we note that within the appellant's narrative section of his post-trial declaration, several of the AOEs (e.g. IV, VI, XXV, XXXI, XXXII, and XXXIII) return to the general theme of continually re-asserting his allegation that he received ineffective assistance of counsel.

[3] The monthly rent was calculated in Japanese yen in the amount of ¥189,000.  Under the exchange rate at the time of trial, the appellant owed the leasing agency $25,997.00.  He pled providently to a dishonorable failure to pay a just debt.  Specification 4 of Charge IV; Record at 88-98.

2

account in the amount of $8,170.00 knowing that there were insufficient funds in the account.[4]

## Discussion

The appellant voluntarily signed a PTA[5] and a stipulation of fact.[6] He providently pled guilty to the offenses in question and testified that he was on active duty in the U.S. Navy during time of the offenses.[7] Record at 99; *see* Prosecution Exhibit 1 at 1.

By unconditionally pleading guilty to the charged offenses, the appellant waived all non-jurisdictional defects, all factual matters related to his guilt, and certain constitutional protections. *United States v. Bradley*, 68 M.J. 279, 281 (C.A.A.F. 2010); RULE FOR COURTS-MARTIAL 910(j), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).[8]

## AOEs III, XXII, XXIII, and XXVI

---

[4] The appellant initially pled guilty to all charges and specifications on the charge sheet. During the appellant's providence inquiry and following a recess, the Government withdrew Specification 3 of Charge II and Specifications 1–3 of Charge IV. Record at 77-78. Additionally, the Government withdrew the figure and word "#150" from the specification of Charge III. *Id*. at 79. Because the value of Check #150 was $500.00, the military judge found the appellant guilty by exceptions and substitutions (excepting "$8,170.00" and substituting "$7,670.00"). *Id*. at 112.

[5] Record at 103; Appellate Exhibit I & II.

[6] Record at 20-22; PE 1.

[7] In his post-trial declaration, the appellant attacks the providence of his pleas based on his post-trial claims of innocence. This claim is completely belied by the record. Other than his claim of innocence, the appellant does not assert any other basis for questioning his pleas and we find none. *See United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (re-affirming legal presumption that pleas of guilty may not be set aside as improvident unless there is a substantial basis for questioning the providence of the plea). Accordingly, we find AOEs XIX and XX without merit. Similarly, based on his stipulation of fact and responses during the providence inquiry, we reject his post-trial claims of lack of jurisdiction. *See* AOEs XXX and XXXI.

[8] Recognizing that we are not bound by the waiver doctrine, *United States v. Nerad*, 69 M.J. 138, 144 (C.A.A.F. 2010), we apply waiver and summarily reject the following AOEs: AOE I, AOE II, AOE IV, AOE XV, and, AOE XVII. We also reject the following AOEs as either inapplicable to the military justice system or completely without merit: AOE V (right to discovery under Federal Rule of Criminal Procedure (FRCP) 16), AOE XXVII (right to magistrate under FRCP 5), AOE XXVIII (right to grand jury), and AOE XXIX (right to an indictment).

**Illegal Pretrial Punishment**

Within AOEs III, XXII, XXIII, and XXVI, the appellant argues that he was subjected to illegal pretrial punishment, cruel and unusual punishment, or subject to restriction tantamount to confinement. We interpret the appellant's broad-based allegations in these AOEs as essentially claims of illegal pretrial punishment under Article 13, UCMJ.

Under the circumstances of this case, we find that the appellant waived all claims based on illegal pretrial punishment. First, neither the appellant nor his two defense counsel raised any issue associated with any aspects of the appellant's pretrial confinement, except his entitlement to confinement credit of 59 days based on *United States v. Allen*, 17 M.J. 126, 127 (C.M.A. 1984). Record at 113. When specifically asked by the military judge regarding illegal pretrial confinement or pretrial punishment, the appellant's defense counsel specifically disavowed any Article 13, UCMJ, issue. *Id*. Under the circumstances of this case, we find waiver. *See United States v. Inong*, 58 M.J. 460, 464 (C.A.A.F. 2003) (holding that in future cases the "raise or waive" rule will be applicable for assertions of illegal pretrial punishment under Article 13 expressly overruling prior cases that required "an affirmative, fully developed waiver on the record"). (overruling and quoting *United States v. Huffman*, 40 M.J. 225, 227 (C.M.A. 1994)).

**AOEs VI and VII**

**Speedy Trial**

In AOEs VI and VII, the appellant asserts that he was denied his right to a speedy trial. In AOE VI, the appellant complains of pre-accusatory delay and having been placed on legal hold without a voluntary extension. We interpret AOE VI as an assertion of a violation of his speedy trial right under the due process clause of the Fifth Amendment. Regardless of how it is framed, by unconditionally pleading guilty and not raising any speedy trial claim, the appellant waived his speedy trial claims whether grounded in the Fifth Amendment, the Sixth Amendment, or R.C.M. 707. *See United States v. Tippit*, 65 M.J. 69, 75 (C.A.A.F. 2007) (holding that an unconditional guilty plea that results in a finding of guilty waives a speedy trial claim under the Sixth Amendment, R.C.M. 707, and also waives a non-litigated speedy trial claim based on Article 10, UCMJ). Following the analytical logic of *Tippit*, we hold that the appellant's pre-accusatorial delay was waived by his failure to raise and litigate the matter. *See United*

*States v. McAllen*, 61 F.App'x. 310 (8th Cir. 2003) (unpub. op.) (per curiam) (holding that unconditional guilty plea waived pre-accusatorial delay grounded in the Fifth Amendment); *United States v. Andros,* 484 F.2d 531, 533 (9th Cir. 1973) (stating that failure to raise claim of pre-indictment delay waives the issue).

**AOEs VIII, X, and XVIII**

## Ineffective Assistance of Counsel[9]

All service members are guaranteed the right to effective assistance of counsel at their court-martial. *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005). We presume that trial defense counsel provided effective assistance throughout the trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004). This presumption is rebutted only by "a showing of specific errors made by defense counsel that were unreasonable under prevailing professional norms." *Davis*, 60 M.J. at 473 (citing *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001)). "[S]econd-guessing, sweeping generalizations, and hindsight will not suffice." *Id.* The evidence of record must establish that counsel "made errors so serious that [they were] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687.

The appellant's broad-based claim of ineffective assistance of counsel (IAC) alleges that his detailed defense counsel team was ineffective in that they: did not contact, secure, or presumably call certain unidentified character witnesses; forced the appellant to enter into the PTA; "coached [him] on how to lie" during the providence inquiry; and, used his mother's ill health to persuade him to accept the PTA. These allegations are belied by the record.

---

[9] Although AOE VIII is framed as an intrusion into the plea negotiation process between the trial counsel and the trial defense counsel, we interpret this AOE as an ineffective assistance of counsel (IAC) claim based on the appellant's statement in his declaration that his defense counsel team "knew nothing about my actual case." Post-Trial Declaration at 19. The rest of AOE VIII speculates that because the appellant's defense counsel accurately predicted the military judge's sentence, the military judge participated in the plea negotiation. This claim has no basis in fact. AOE XVIII is framed as a denial of the right to present witnesses; however, the substance of the AOE alleges that his defense counsel team was ineffective in that the appellant claims that he gave his defense team "10 to 20 names" of character witnesses, but defense counsel only contacted 1 or 2 of them. *Id*. at 68. Additionally, we note that although several of the AOEs are framed differently, within his narrative section the appellant continually returns to his general underlying IAC claim. *Compare* e.g. AOEs IV, VI, XXV, XXXI-XXXIII *with* Post-Trial Declaration at 12; 15-16; 90-91; 104-14.

When questioned regarding his opinion of his defense team, the appellant responded that their performance and advice had been "outstanding." Record at 17.

The appellant's post-trial assertions of IAC are not only inconsistent with the facts he testified to during his providence inquiry, but also he fails to specifically allege any prejudice. In this regard, the appellant does not show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Tippit*, 65 M.J. at 76 (citations and internal quotation marks omitted). Despite his repeated refrain that his defense counsel failed to contact, interview, and presumably call various character witnesses to testify, the appellant does not demonstrate who these character witnesses were, or what they would say to buttress his post-trial claim of innocence. Contrary to his post-trial assertions, we find that the appellant received effective representation in that his defense team negotiated a PTA that significantly reduced his punitive exposure, called four witnesses during the presentencing hearing, and submitted an extensive clemency submission. AE II; Record at 118-37; Clemency Petition of 28 Mar 2013.

Based on our careful assessment of the appellant's post-trial submission and analysis of the record, we find that the appellant has failed to meet his burden of establishing a "factual foundation for [his] claim of ineffective representation." *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000). Because the appellant's post-trial submission alleges facts that would not result in relief, we find no basis for ordering either a post-trial evidentiary hearing or post-trial affidavits from the appellant's defense team. *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

### Additional AOEs

The appellant's remaining assignments of error have either no factual basis or are completely without merit. They require no further discussion.

### Court-Martial Order (CMO) Error

Although not raised by the appellant, we note a discrepancy in the military judge's finding of guilty as to Specification 4 of Charge IV. The military judge excepted language in the specification that referenced the time period with respect to the appellant's dishonorable failure to pay a just debt. Record at 98. The military judge reasoned that reference to the time period from

6

13 July 2012 to 7 January 2013 was unnecessary for purposes of a provident plea because the appellant's dishonorable failure to pay a just debt occurred on the date it became due and payable. *Id*. Both parties agreed with the military judge's interpretation as well as his decision to except this language from the specification. *Id*. The military judge, however, did not except that language when he found the appellant guilty. *Id*. at 112. We find no prejudice as a result of this error as this language was surplusage; however, the appellant is entitled to an accurate official record of his court-martial conviction. *United States v. Brown*, 62 M.J. 602, 604 (N.M.Ct.Crim.App. 2005) (*en banc*); *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998). We will direct corrective action in our decretal paragraph.

## Conclusion

The findings and the sentence, as approved by the CA, are affirmed. The supplemental CMO will reflect the finding of guilt as to Specification 4 of Charge IV as excepting the language "from on or about 13 July 2012 to on or about 7 January 2013" after the words "Yokosuka, Japan" in that specification.


For the Court



R.H. TROIDL
Clerk of Court

7

APPENDIX

I.

WHETHER NCIS ILLEGALLY OBTAINED EVIDENCE WITHOUT A WARRANT?

II.

WHETHER APPELLANT'S RIGHT TO COUNSEL WAS VIOLATED WHEN NCIS CONTINUED TO QUESTION HIM AFTER HE INVOKED HIS 31(b) RIGHTS?

III.

WHETHER APPELLANT WAS PLACED IN ILLEGAL PRETRIAL CONFINEMENT?

IV.

WHETHER APPELLANT WAS DENIED THE ABILITY TO PRESENT FAVORABLE EVIDENCE?

V.

WHETHER APPELLANT'S RIGHT TO DISCOVERY WAS VIOLATED UNDER RULE 16 OF THE FEDERAL RULE OF CRIMINAL PROCEDURE?

VI.

WHETHER THE APPELLANT WAS SUBJECTED TO PRE-ACCUSATION DELAY?

VII.

WHETHER APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED?

VIII.

WHETHER PLEA DISCUSSIONS BETWEEN TRIAL COUNSEL AND TRIAL DEFENSE COUNSEL WERE ILLEGAL?

IX.

WHETHER APPELLANT'S CASE SHOULD HAVE BEEN DISPOSED OF THROUGH A LESSER FORM OF PUNISHMENT?

X.

WHETHER COUNSEL FOR APPELLANT WAS INEFFECTIVE?

XI.

WHETHER THERE WAS A CONFLICT OF INTEREST BETWEEN THE TRIAL DEFENSE COUNSEL, TRIAL COUNSEL AND THE CONVENING AUTHORITY?

XII.

WHETHER THERE WAS GOVERNMENT INTRUSION BETWEEN APPELLANT'S AND TRIAL DEFENSE COUNSEL'S ATTORNEY-CLIENT RELATIONSHIP?

XIII.

WHETHER THE MILITARY JUDGE SHOULD HAVE RECUSED HIMSELF?

XIV.

WHETHER THERE WAS IMPROPER CONDUCT BY THE TRIAL COUNSEL?

XV.

WHETHER APPELLANT'S FIFTH AMENDMENT RIGHT TO SELF-INCRIMINATION WAS VIOLATED?

XVI.

WHETHER APPELLANT'S SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL WAS VIOLATED?

XVII.

WHETHER APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONTING WITNESSES WAS VIOLATED?

XVIII.

WHETHER APPELLANT WAS DENIED THE RIGHT TO PRESENT WITNESSES ON HIS BEHALF?

XIX.

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY ACCEPTING THE APPELLANT'S GUILTY PLEAS?

XX.

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY PRESUMING THE APPELLANT WAS GUILTY WITHOUT PROPER PROOF?

XXI.

WHETHER IMPROPER EVIDENCE WAS ENTERED DURING SENTENCING?

XXII.

WHETHER APPELLANT'S RESTRICTION ON THE USS MUSTIN (DDG 89) WAS
TANTAMOUNT TO CONFINEMENT?

XXIII.

WHETHER APPELLANT WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT IN
VIOLATION OF THE EIGHT AMENDMENT WHILE CONFINED ON THE USS MUSTIN
(DDG 89)?

XXIV.

WHETHER APPELLANT'S EQUAL PROTECTION RIGHTS WERE VIOLATED?

XXV.

WHETHER THE TRIAL DEFENSE COUNSEL'S BEHAVIOR WAS UNETHICAL?

XXVI.

WHETHER APPELLANT WAS SUBJECTED TO ILLEGAL PRETRIAL CONFINEMENT?

XXVII.

WHETHER APPELLANT'S RIGHT TO BE HEARD BEFORE A MAGISTRATE UNDER
RULE 5 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE WAS VIOLATED?

XXVIII.

WHETHER APPELLANT'S RIGHT TO A GRAND JURY WAS VIOLATED?

XXIX.

WHETHER APPELLANT'S RIGHT TO AN INDICTMENT WAS VIOLATED?

XXX.

WHETHER THE COURT-MARTIAL HAD JURISDICTION OVER THE APPELLANT?

XXXI.

WHETHER THE COURT-MARTIAL HAD JURISDICTION OVER THE OFFENSES
AGAINST THE APPELLANT?

XXXII.

WHETHER THE CONVENING AUTHORITY EXERCISED UNLAWFUL COMMAND
INFLUENCE OVER THE MILITARY JUDGE?

XXXIII.

WHETHER THE APPELLANT'S PRETRIAL AGREEMENT WAS IN VIOLATION OF HIS
FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION?